1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

CRYSTAL R.W.,

Plaintiff,

CASE NO. C22-1685-BAT

9

v.

**ORDER REVERSING THE
COMMISSIONER'S FINAL DECISION**

10

COMMISSIONER OF SOCIAL SECURITY,

11

Defendant.

12

13      Plaintiff appeals the ALJ's denial of her application for Supplemental Security Income.

14 She contends the ALJ misevaluated the medical opinion evidence and her testimony.  Dkt. 14 at

15 1.  For the reasons below, the Court **REVERSES** the Commissioner's final decision and

16 **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. §

17 405(g).

18                                **BACKGROUND**

19      Plaintiff is currently forty-two years-old, has a high school education, and previously

20 worked as a home care aide.  Tr. 26, 45.  On April 25, 2019, she applied for benefits, alleging

21 disability as of March 15, 2008.  Tr. 162-66.  Her application was denied initially and on

22 reconsideration.  Tr. 50-78.  The ALJ conducted a hearing on July 6, 2021, and subsequently

23

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 1

1  found Plaintiff not disabled on July 23, 2021.  Tr. 16-27.  As the Appeals Council denied

2  Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 2-7.

**DISCUSSION**

**A.   Plaintiff's Testimony**

Plaintiff contends the ALJ misevaluated her testimony regarding her migraine headaches and neck pain.  She testified at the hearing her migraines and "issues with her neck" prevented her from physically engaging in her past work as a home care aide and she cannot perform even "lighter lifting," including "helping [her] clients [with] their self-care, grocery [shopping, and] going to stores."  Tr. 40.  She also stated doing chores take longer for her because of her neck.  Tr. 42.  Plaintiff stated she suffers from four to six headaches per month, depending in part on her stress level, and "[t]he medication doesn't really help."  Tr. 42.

The ALJ found at step two that Plaintiff's degenerative disc disease and migraines constitute severe impairments.  Tr. 18.  The ALJ subsequently found Plaintiff presented objective medical evidence establishing generally her medically determinable impairments could cause the symptoms alleged, and no affirmative evidence of malingering.  Tr. 21.  The ALJ was therefore required to provide "specific, clear and convincing reasons" to discount Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply); *see also* Tr. 22.

**1.   Headache Testimony**

The ALJ discounted Plaintiff's testimony regarding her physical impairments as a whole, including her headaches, based on "unremarkable" objective findings and improvement with

treatment.  Tr. 21.  Regarding Plaintiff's headaches, the ALJ noted Plaintiff was given "a prescription for over-the-counter analgesics for her pain complaints," "was started on medication for her headaches," and "underwent an occipital nerve block and trigger point injections."  Tr. 22 (citing Tr. 308, 464); Tr. 308 (Plaintiff is prescribed ibuprofen at October 2018 clinic visit); Tr. 464 (Plaintiff reports in May 2019 that her headaches improved after April 2019 occipital nerve injections).

Plaintiff contends most of the objective evidence cited by the ALJ to discount her testimony regarding her physical impairments did not pertain to her headaches.  Plaintiff further argues the limited improvement she experienced in her migraines with aggressive treatment nevertheless left her suffering from four to six migraines per month and unable to sustain competitive work.  Dkt. 14 at 4.  In support, Plaintiff cites to post-April 2019 medical evidence regarding a second round of occipital nerve block and trigger point injections that were not helpful, which she notes the ALJ neglected to address in his decision.  Dkt. 14 at 5-6 (citing Tr. 254, 343, 554, 737-38, 722).

In opposition, the Commissioner acknowledges Plaintiff focuses on the ALJ's rejection of her testimony as to her neck pain and migraines, but nonetheless points primarily to medical records cited by the ALJ in favor of discounting Plaintiff's lower back pain.  Dkt. 16 at 2-3 (citing Tr. 21-23); *see also* Dkt. 17 at 3 (accurately noting the Commissioner's opposition generally discusses and summarizes medical records that do not concern Plaintiff's neck and or her migraines).  The Commissioner then makes the conclusory argument "the ALJ sufficiently linked Plaintiff's allegations with the medical evidence that contradicted them," citing simply to the Ninth Circuit's decision in *Kaufmann v. Kijakazi*, in suggesting the Court should scour "all the pages of the ALJ's decision" to find a reason that supports the ALJ's evaluation of Plaintiff's

testimony.  Dkt. 16 at 5 (citing 32 F.4th 843, 851 (9th Cir. 2022)).  As for Plaintiff's

"improvement," the Commissioner cites to additional record evidence not cited by the ALJ,

which the Commissioner contends demonstrates improvement.  Dkt. 16 at 4-5.

In accordance with *Kaufmann,* the Court has reviewed "the ALJ's full explanation" for

rejecting Plaintiff's testimony regarding her headaches, "scrutiniz[ing] all of the pages of [the]

ALJ's decision to determine whether the ALJ provided clear and convincing reasons to discount

[Plaintiff's] testimony, rather than focusing on the sufficiency of the reasons given only on

[pages 21-22]."[1]  32 F.4th at 851.  With limited exceptions, the "unremarkable" objective

medical evidence to which the ALJ cited did not pertain to Plaintiff's headaches and, therefore,

did not provide clear and convincing evidence contradicting her headache testimony.  *See* Tr. 21-

22.

The limited headache-related records to which the ALJ cited also did not contradict

Plaintiff's testimony regarding the intensity and frequency of her headaches.  In particular, the

ALJ cited to October 2018 medical notes indicating Plaintiff was provided with a prescription for

ibuprofen for her headache pain, and to February 2019 and April 2019 visit notes from Plaintiff's

treating neurologist, Dr. Minji Kim, noting Plaintiff was started on amitriptyline for her

migraines and she received an occipital nerve block and trigger point injections for her

headaches.  Tr. 22 (citing Tr. 310, 338-42).  Neither record undermines Plaintiff's testimony.  In

---

[1] To the extent that the Commissioner suggests that the Court should scrutinize the ALJ's
decision for *post hoc* arguments, the Court, however, declines such a broad interpretation of
*Kaufmann*, 32 F.4th at 851, because such review is not authorized under *Kaufmann* or any other
Ninth Circuit authority.  *See Makenzie M. v. Comm'r of Soc. Sec.*, No. C22-5013-BAT, 2022 WL
2817086, at *1 (W.D. Wash. July 19, 2022) (citing *Bray v. Comm'r of Social Sec. Admin.*, 554
F.3d 1219, 1225-26 (9th Cir. 2009)) (court reviews ALJ's decision "based on the reasoning and
factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the
adjudicator may have been thinking").

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 4

fact, Dr. Kim's February 2019 examination corroborates Plaintiff's testimony regarding the frequency of her headaches, documenting they at one time were "intermittent" but had become more "constant and intense." Tr. 335. In February 2019, Dr. Kim's examination revealed Plaintiff was positive for photophobia and pain, dizziness, and headache symptoms. Tr. 336.

Finally, the "improvement" noted by the ALJ also did not constitute substantial evidence for discounting Plaintiff's headache testimony. *See* Tr. 21, 24. Following Plaintiff's April 2019 occipital nerve block and trigger point injection, Plaintiff stated her pain level decreased from a 7/10 to a 5/10 post-procedure. Tr. 342 (Dr. Kim's notes); *see also* Tr. 463-64 (reporting to her primary care physician, Dr. Harless, on May 7, 2019, that she felt improvement in her headache pain following the April 2019 nerve block the week before). However, the record reveals Plaintiff's improvement following the first procedure was short-lived. By August 2019, the improvement Plaintiff experienced from nerve blocks and injections had decreased. Tr. 554, 447.

Plaintiff underwent a second occipital nerve injection in June 2019, Tr. 533, which she subsequently reported to Dr. Kim "did not provide much pain relief." Tr. 554. Dr. Kim noted in August 2019, that Plaintiff experienced a headache nearly every day and that another new medication had not helped much. Tr. 554. Plaintiff's August 2019 examination was positive for dizziness, headaches, and tingling, "consistent with migraine with cervicalgia and occipital neuralgia." Tr. 554, 557. Moreover, the *post hoc* records cited by the Commissioner in opposition, which include the same April 2019 visit notes described above and two additional visit records unrelated to Plaintiff's headaches, do not change the result. *See* Dkt. 16 at 4-5 (citing Tr. 464, 594, and 518); Tr. 594 (October 2019 physical therapy notes pertaining to therapy for "[r]adiculopathy of lumbosacral region"); Tr. 518 (May 2019 progress notes from

social worker pertaining to Plaintiff's PTSD); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

In sum, the Court concludes the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony regarding her headaches, and accordingly erred.

### 2. Neck Pain Testimony

The ALJ also discounted Plaintiff's testimony regarding her physical impairments as a whole, based on "unremarkable" objective findings and improvement with treatment.  Tr. 21. The ALJ did not specifically address Plaintiff's neck pain or her related testimony other than to note Plaintiff's neck pain increased after January 2020, and August 2020 imaging "showed multi-level mild to moderate degenerative disc disease."  Tr. 22 (citing Tr. 750-51, August 2020 MRI of Plaintiff's cervical spine).  Unlike Plaintiff's headaches, the ALJ did not reference any improvement in Plaintiff's neck pain in rejecting her testimony, but instead stated simply that the RFC "assessed . . .  accounts for any ongoing difficulties that [Plaintiff] may have by limiting her to work at the light exertional level with additional postural and environmental limitations."  Tr. 22.

Plaintiff contends the ALJ erred in failing to specifically offer reasons to discount her testimony regarding her neck pain and in his assessment of her RFC as it pertained to her neck pain.  Dkt. 14 at 6.  Plaintiff argues the evidence to which the ALJ cited – along with a February 2021 examination – itself constituted objective evidence she suffered from abnormalities in her neck.  Dkt. 14 at 6 (citing Tr. 750-51).  Plaintiff further suggests any error in rejecting her neck pain testimony was not harmless, and notes the ALJ failed to include any limitation regarding

1   reaching, handling, or fingering to accommodate her neck pain, which she contends "caused

2   symptoms extending to her right hand." Dkt. 14 at 7. In conjunction with this argument,

3   Plaintiff additionally argues the ALJ erred in determining RFC because her testimony required

4   the ALJ reduce her capacity to lift and carry based on her neck pain.[2]

5           The Commissioner makes the same general arguments regarding Plaintiff's neck pain as

6   those set forth above with respect to her headaches. Dkt. 16 at 2-3, 5.

7           Again, in accordance with *Kaufmann,* the Court has reviewed "the ALJ's full

8   explanation" for rejecting Plaintiff's testimony regarding her neck pain. *Kaufmann*, 32 F.4th at

9   851. Like Plaintiff's headaches, much of the "unremarkable" objective medical evidence to

10  which the ALJ cited did not pertain to Plaintiff's neck pain and, therefore, did not provide clear

11  and convincing evidence contradicting this testimony. *See* Tr. 21-22. The limited neck pain

12  records to which the ALJ cited also did not contradict Plaintiff's testimony regarding the

13  limitations associated with her neck pain and, in fact, demonstrate cervical abnormalities, which,

14  at a minimum, required the ALJ to more specifically address Plaintiff's testimony regarding her

15  neck pain. *See* Tr. 750-58 (Providence Health and Services imaging and treatment notes from

16  August 2020-March 2021). Furthermore, the ALJ failed to explain how Plaintiff's cervical

17  impairments and neck pain were assessed in determining RFC. Accordingly, the ALJ erred and

18  remand is required for the ALJ to reconsider Plaintiff's testimony regarding her neck pain and to

19  reassess Plaintiff's RFC in light of the pain and objective medical evidence regarding her

20  cervical impairments.

21

22

23

---

[2] Plaintiff also notes the state agency consultants, Drs. Fitterer and Staley, were unable to consider the objective medical evidence regarding her neck pain because the related imaging and examinations occurred August 2020-March 2021, following their August 2019 and January 2020 opinions. Tr. 58-59 (Dr. Fitterer's opinion); Tr. 73-75 (Dr. Staley's opinion).

**B.      Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of two medical opinions, one pertaining to her headaches and one pertaining to her mental impairments.

**1.      Physical Impairments**

In assessing Plaintiff's RFC, the ALJ evaluated four medical opinions regarding Plaintiff's physical impairments, including:  (1) a June 2021 opinion regarding Plaintiff's headaches from her treating physician, Dr. Harless, Tr. 722-24; (2) an additional overarching June 2021 opinion from Dr. Harless regarding Plaintiff's functional capacity that pertained to all of her physical impairments, including her headaches and degenerative disc disease, Tr. 725-29; [3] and (3) and (4) August 2019 and January 2020 opinions from non-examining state agency consulting physicians, Drs. Fitterer and Staley, on initial review and reconsideration, respectively.  Tr. 58-59 (Dr. Fitterer's opinion); Tr. 73-75 (Dr. Staley's opinion).

Regarding Plaintiff's headaches, Dr. Harless noted in her medical opinion Plaintiff suffers from "bitemporal and occipital pain, sharp/stabbing pain, pulling/tugging pain, severe pain."  Tr. 722.  Dr. Harless stated at the time of the June 2021 opinion, Plaintiff continued to suffer from four to six headaches per month despite treatment, and Plaintiff's headaches last approximately forty-five minutes to one hour in duration.  Tr. 722.  Dr. Harless further noted Plaintiff attempted "multiple medication trials . . . with poor response," and she had shown "some improvement" with Topamax, Sumatriptan, and Botox injections.  Tr. 723.

---

[3] Dr. Harless submitted several opinions on Plaintiff's behalf, including: (1) an opinion regarding Plaintiff's "Headaches Functional Capacity," Tr. 722-24; (2) an overarching opinion regarding Plaintiff's functional capacity as to all her physical impairments, including her headaches and degenerative disc disease, Tr. 725-29; and (3) a mental residual functional capacity assessment. Tr. 730-36.  Plaintiff challenges only the ALJ's evaluation of Dr. Harless' opinions as they pertained to her headaches.  Dkt. 14 at 8-10.

1    In terms of Plaintiff's functional limitations, Dr. Harless opined when Plaintiff suffers

2    headaches, she is precluded from performing basic work activities and will need unscheduled

3    breaks during the workday.  Tr. 723.  She further opined Plaintiff would require such breaks,

4    which she estimated at one hour, approximately two to three times per week.  Tr. 723.  Dr.

5    Harless stated her June 2021 opinion applied as of June 2019.  Tr. 724.

6        By contrast, neither state agency physician specifically addressed Plaintiff's headaches in

7    their opinions regarding her physical impairments, and both Drs. Fitterer and Staley opined

8    Plaintiff possessed an RFC that allowed for unlimited noise and vibrations.  Tr. 58-59, 73-75.

9    The ALJ found Dr. Harless' opinion was not persuasive, but that Drs. Fitterer's and Staley's

10   opinions were persuasive.  Tr. 24-25.  The ALJ ultimately opined Plaintiff possessed an RFC for

11   light work with additional postural limitations and limited public contact.  Tr. 20.  The ALJ did

12   not include any limitations related to Plaintiff's headaches.  Tr. 20.

13       Plaintiff challenges the ALJ's evaluation of Dr. Harless' headache opinion.  Dkt. 14 at 8-

14   10.  The applicable regulations require the ALJ to articulate the persuasiveness of each medical

15   opinion, specifically with respect to whether the opinions are supported and consistent with the

16   record.  *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  An ALJ's consistency and

17   supportability findings must be supported by substantial evidence.  *See Woods v. Kijakazi*, 32

18   F.4th 785, 792 (9th Cir. 2022).

19       The ALJ here combined his evaluation of Dr. Harless' headache and general physical

20   impairment opinions into one assessment.  Tr. 24.  Nevertheless, to the extent possible, the Court

21   focuses on the ALJ's evaluation of Dr. Harless' opinions as it pertains to Plaintiff's headaches,

22   addressing in turn the ALJ's supportability and consistency findings.  The Court notes several of

23   the ALJ's reasons for rejecting Dr. Harless' opinion overlap with the reasons that the ALJ

1    provided for rejecting Plaintiff's testimony, as discussed above.

2              a.    **Supportability**

3        The ALJ found Dr. Harless' headache opinion was not supportable because Dr. Harless

4    did "not cite to any specific neurological deficits."  Tr. 24.

5        Plaintiff argues the ALJ was not permitted to rely on "[a] lack of objective abnormalities"

6    to discount Dr. Harless' opinion because the cause of migraine headaches "is not generally

7    understood by the medical community."  Dkt. 14 at 9.  Plaintiff further notes the relevant Social

8    Security Ruling ("SSR"), SSR 19-4p, references the types of objective evidence that the SSA

9    will consider in determining whether headaches constitute a medically determinable impairment,

10   and that a lack of objective physical examination evidence has little relevance.  Dkt. 17 at 5

11   (citing SSR 19-4p, 2019 WL 4169635 at *6 & n.22).  In opposition, the Commissioner asserts

12   while Dr. Harless pointed to attached notes and studies to support her opinion, the attached notes

13   did not contain any abnormal findings; nor did Dr. Harless explain how they supported her

14   opinion.   Dkt. 16 at 7 (citing Tr. 726-27).

15       The Commissioner, however, mischaracterizes Dr. Harless' attached notes regarding

16   Plaintiff's migraines.  Dr. Harless' attached notes detail the onset of Plaintiff's migraines, her

17   treatment history, and her symptoms.  Tr. 737.   In describing Plaintiff's treatment history, Dr.

18   Harless notes Plaintiff worked for more than two years with neurologists, Drs. Martinez and

19   Kim, during which time she underwent "multiple" unsuccessful "medication trials without

20   improvement," including with "gabapentin, amitriptyline, propranolol, and Robaxin."  Tr. 737.

21   Dr. Harless further noted Plaintiff's treatment at the time included Topamax, Sumatriptan, and

22   Botox injections.  Tr. 737.

23       Furthermore, contrary to the ALJ's finding, "the absence of headache[s] on examination

1    or otherwise normal imaging results do[es] not preclude chronic headaches." *Aalen P. v.*

2    *Comm'r of Soc. Sec.,* No. C20-5826-BAT, 2021 WL 2644576, at *1 (W.D. Wash. June 28, 2021)

3    (discussing SSR 19-4p, 2019 WL 4169635, at *4).  Pursuant to SSR 19-4p, imaging and

4    laboratory tests are used to "rule out" other medical conditions, not to measure the severity of

5    headaches, and "unremarkable" results are nevertheless consistent with headache disorders.  *See*

6    2019 WL 4169635, at *4.

7         In assessing a claimant's RFC in light of a headache disorder, SSR 19-4p further provides

8    that "symptoms of a primary headache disorder, such as photophobia" can constitute a symptom

9    that "cause[s] a person to have difficulty sustaining attention and concentration."  *Id.* at *8.

10   Here, Dr. Harless specifically referenced neurologist, Dr. Kim's treatment of Plaintiff, during

11   which Dr. Kim, in turn, made several examination findings and identified numerous symptoms

12   associated with Plaintiff's migraines, including photophobia, and diagnosed Plaintiff with

13   migraine with cervicalgia and occipital neuralgia.  Tr. 737; *see also* Tr. 335-36, 340, 554, 557.

14        Accordingly, the ALJ's supportability finding regarding Dr. Harless' headache opinion

15   was not supported by substantial evidence and erroneous.

16             **b.    Consistency**

17        As for consistency, the ALJ found the limitations assessed by Dr. Harless "are not

18   consistent with the longitudinal record."  Tr. 24.  In support, the ALJ's only record citation was

19   to February 2019 examination notes from neurologist, Dr. Kim, in support of the finding that

20   Plaintiff "has consistently presented with normal strength, a normal gait, deep tendon reflexes,

21   and some slightly diminished sensation."  Tr. 24 (citing Tr. 339).[4]  The ALJ also proffered,

22

23

---

[4] The same visit notes document Plaintiff had just started the medication, amitriptyline, for her
migraines, which Dr. Kim stated that she would monitor.  Tr. 341.  Dr. Kim also noted she

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 11

without any supporting citations, that Plaintiff experienced improvement and the frequency of

Plaintiff's headaches was "not corroborated in the treatment records."  Tr. 24.

### Improvement with Treatment

For all of the reasons already discussed above with Plaintiff's testimony, the Court's

independent review of the record establishes Plaintiff experienced, at best, limited improvement

as a result of her headache treatment.  While the first round of occipital nerve injections in April

2019 resulted in some improvement, Plaintiff's second round of injections were less effective,

leaving her with headaches that were "still bad" and "coming on almost every day."  Tr. 554.

Additionally, Plaintiff's doctors ultimately discontinued the injections in favor of other

medications which, despite some limited improvement, continued to leave Plaintiff with multiple

migraines per month.  *See* Tr. 254, 723, 737, 343.

### Longitudinal Record and Headache Frequency

Plaintiff argues the ALJ failed to provide adequate record support for his statement that

Dr. Harless' opinion was inconsistent with the longitudinal record.  She contends the record

supported the frequency of her headaches, and notes Dr. Kim's August 2019 treatment records

that she experienced headaches nearly every day in August 2019.  Tr. 554.  Plaintiff further notes

Dr. Harless' opined frequency was consistent with her own testimony.  Dkt. 17 at 6 (citing Tr.

21, 42, 277).  The Commissioner counters the ALJ reasonably determined Dr. Harless'

frequency determination was not consistent with the medical record.

In support of his rejection of Dr. Harless' opinion on consistency grounds, the ALJ cited

to the same record evidence already discussed above with Plaintiff's testimony – evidence that

---

offered Plaintiff occipital nerve block and trigger point injection, which they would complete at
the next visit.  Tr. 341.

did not individually or collectively undermine Dr. Harless' opinion regarding the nature of

Plaintiff's headaches or the limitations associated with them.  Moreover, the Court has already

concluded the ALJ erred in discounting Plaintiff's headache testimony, which itself corroborated

Dr. Harless' opinion regarding the frequency of Plaintiff's headaches.  Accordingly, the ALJ's

consistency findings were not supported by substantial evidence.

Because both the ALJ's supportability and consistency findings regarding Dr. Harless'

headache opinion fail, the ALJ erred and the Court remands the case to reconsider Dr. Harless'

headache opinion.

### 2.      Mental Impairments

At step two, the ALJ found Plaintiff's depression and post-traumatic stress disorder

("PTSD") constituted severe impairments.  Tr. 18.  The ALJ subsequently evaluated four

medical opinions regarding Plaintiff's mental impairments, including: (1) a June 2021 opinion

from treating physician, Dr. Harless, Tr. 730-36; (2) a March 2019 opinion from examining

Washington State DSHS psychologist, Dr. Tasmyn Bowes, Tr. 322-29; and (3) and (4) August

2019 and January 2020 opinions from non-examining state agency consulting psychologists, Drs.

Vincent Gollogly and Michael Brown, on initial review and reconsideration, respectively.  Tr.

60-61 (Dr. Gollogly's opinion); Tr. 75-77 (Dr. Brown's opinion).

Plaintiff challenges the ALJ's evaluation of Dr. Bowes' opinion, in which Dr. Bowes

diagnosed Plaintiff with depression, PTSD, and active alcohol use disorder in March 2019.  Tr.

325.  Dr. Bowes opined Plaintiff possessed many moderate limitations based on her mental

impairments, along with three marked limitations in her abilities to understand, remember and

persist in tasks by following detailed instructions; perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances; and complete a normal

workday and work week without interruptions from psychologically based symptoms.  Tr. 325.

Dr. Bowes also opined Plaintiff's overall functional limitations were marked.[5]  Tr. 325.

By contrast, the state agency consultants agreed Plaintiff possessed moderate limitations in her abilities to interact with others and to concentrate, persist, or maintain pace, and possessed only mild limitations in her abilities to adapt or manage herself and to understand, remember, or apply information.  Tr. 60-61, 75-77.  The ALJ ultimately found Dr. Bowes' opinion was not persuasive, while concluding the state agency consultants' opinions were "somewhat persuasive."[6]  Tr. 25.  The ALJ, however, noted he "accounted for [Plaintiff's] difficulties with concentration" in his assessed RFC based in part on Dr. Bowes' evaluation.[7]  Tr. 25.

The Court addresses in turn the ALJ's supportability and consistency findings regarding Dr. Bowes' opinion.

---

[5] Plaintiff's treating primary care physician, Dr. Harless, opined Plaintiff possessed even more severe limitations than those opined to by Dr. Bowes.  *See* Tr. 731-33 (opining Plaintiff possessed either marked or severe limitations in all of the functional categories).  Plaintiff, however, does not challenge the ALJ's evaluation of Dr. Harless' mental impairment opinion.

[6] The ALJ also found that Dr. Harless' opinion, unchallenged by Plaintiff, was not "entirely persuasive."  Tr. 24.

[7] Contrary to this statement, it does not appear the ALJ accounted for any concentration limitations in his assessed RFC.  Rather, the RFC determination states Plaintiff is able to carry out *both* "simple and detailed or complex instructions" and to make judgments on *both* "simple and detailed or complex work-related issues."  Tr. 20.  As written, this language does not suggest any limitations in concentration.

Nor do the other two mental impairment-related limitations account for Dr. Bowes' opined limitations regarding concentration.  The ALJ's first RFC limitation Plaintiff "can deal with occasional changes in the work environment," could arguably be indirectly related to Plaintiff's concentration, but it is more accurately regards an *adaptation* limitation – and Dr. Bowes did not opine to a marked limitation in terms of Plaintiff's adaption to change.  *See* Tr. 20; Tr. 325 (opining that Plaintiff possesses a moderate limitation in her ability to adapt to changes in a routine work setting).  The second RFC limitation states Plaintiff can "work in jobs that require limited public contact."  Tr. 20.  This limitation was not based on Dr. Bowes' opinion but was instead based directly on the opinions of state agency psychologists, Drs. Gollogly and Brown.  *See* Tr. 24 (acknowledging state agency consultants' opinions that Plaintiff "can work with limited public contact); Tr. 61, 76.

1

### a. Consistency

2       Plaintiff argues the ALJ made no consistency findings regarding Dr. Bowes' opinion and

3  that this failure to address the consistency factor and to comply with the pertinent regulations

4  means that the ALJ's assessment of the opinion is not supported by substantial evidence.  The

5  Commissioner counters the ALJ's finding that "Dr. Bowes' opinion was at odds with [Dr.

6  Bowes'] own examination findings" is a consistency as opposed to a supportability finding.  Dkt.

7  16 at 9.  The Commissioner, however, is mistaken.

8       Under the regulations' articulation requirements, an ALJ must "explain how [they]

9  considered the supportability and consistency factors for a medical source's medical opinions"

10  when determining how persuasive they find that source.  20 C.F.R. § 416.920c(b)(2); *see also*

11  *Woods*, 32 F.4th at 792 (An ALJ "cannot reject an examining . . . doctor's opinion as

12  unsupported or inconsistent without providing an explanation supported by substantial

13  evidence.").  "Supportability" and "consistency" are two distinct factors, and the ALJ should

14  evaluate them as such.  *See Woods*, 32 F.4th at 793 & n.4 (concluding that an ALJ's statement

15  that a medical opinion was "'not supported by' the record" was not a supportability finding, but

16  instead, in fact, constituted a consistency finding, and holding that to "avoid confusion in future

17  cases, ALJs should endeavor to use these two terms of art – 'consistent' and 'supported' – with

18  precision").

19       In making his findings regarding the persuasiveness of Dr. Bowes' opinion, the ALJ

20  compared Dr. Bowes' opinion with her own objective examination findings and observations, as

21  opposed to comparing Dr. Bowes' opinion with the longitudinal record.  *See* Tr. 25.  This

22  indicates the ALJ's findings were supportability – as opposed to consistency findings – as

23  defined by the controlling regulations.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)

(Regarding "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *cf.* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

However, the Court notes that under *Woods*, a finding Dr. Bowes' opinion is unsupportable, if supported by substantial evidence, would be a sufficient basis for the ALJ to conclude Dr. Bowes' opinion was unpersuasive. *See* 32 F.4th at 792-94 & n.4 (consistency and supportability constitute two distinct factors that should be treated separately). Accordingly, the Court addresses below the ALJ's supportability findings.

### b.   Supportability

The ALJ found Dr. Bowes' opinion was not supportable because Dr. Bowes "did not provide any rationale or explanation" for her "particular limitations." Tr. 25. The ALJ further found Dr. Bowes' own objective findings from her examination of Plaintiff lacked support. Tr. 25. In support, the ALJ noted Dr. Bowes' seemingly normal findings regarding Plaintiff's grooming, eye contact, speech, along with Plaintiff's cooperative, alert and oriented presentation. Tr. 25. While the ALJ acknowledged Dr. Bowes found Plaintiff struggled with concentration tasks, the ALJ found Dr. Bowes' opinion was nevertheless not supported. Tr. 25 (citing Tr. 326-27).

Plaintiff argues the ALJ's analysis of the supportability factor was not supported by

substantial evidence because Dr. Bowes' own testing provided strong support for her opined

limitations.  Specifically, Plaintiff notes her inability to complete the Trail Making test supported

Dr. Bowes' opinion regarding her concentration deficit, and, when combined with additional

symptom inventories completed by Dr. Bowes, additionally supported Dr. Bowes' opinion

Plaintiff would have difficulty performing tasks on an employer's schedule and completing a

normal workday without interruption from psychological symptoms.  Dkt. 14 at 12.  Plaintiff

further notes the MSE findings cited by the ALJ do not relate to the specific deficits to which Dr.

Bowes opined.

Additionally, Plaintiff suggests the ALJ utilized an inconsistent approach in analyzing

supportability among the medical opinions, and argues Dr. Bowes' opinion was supportable for

the same reasons the ALJ found state agency consulting physicians' opinions adequately

supported.  Dkt. 14 at 11-12.  In particular, Plaintiff notes the ALJ found fully persuasive and

supportable Drs. Fitterer's and Staley's opinions regarding Plaintiff's physical impairments.[8]

Dkt. 14 at 11-12 (citing Tr. 24-25).  Plaintiff notes while Drs. Fitterer and Staley summarized the

medical evidence and stated their conclusions, they provided no narrative explanations to support

their assessment of particular limitations.  Dkt. 14 at 11-12 (citing Tr. 24-25).  Plaintiff thus

argues if Drs. Fitterer's and Staley's opinions were adequately supported, then the ALJ should

have found Dr. Bowes' opinion was supported as well.

In opposition, the Commissioner contends the ALJ's supportability findings were

reasonable because Dr. Bowes' opinion was a "check-box format, without any explanation or

---

[8] Presumably, Plaintiff cites to Drs. Fitterer's and Staley's physical impairment opinions because their medical opinions were the only ones the ALJ found entirely persuasive. *See* Tr. 25.  By contrast, the ALJ found the state agency consulting psychologists' opinions regarding Plaintiff's mental impairments only "somewhat persuasive."  Tr. 25.

1    citation to evidence to explain the basis for the marked limitations." Dkt. 16 at 8.

2        The Court finds the ALJ's rationale for finding Dr. Bowes' opinion unsupportable is not

3    supported by substantial evidence.  While portions of Dr. Bowes' opinion utilized a check-box

4    format, Dr. Bowes also supported her opined limitations with a clinical interview, examination,

5    and testing.  Tr. 322-25.  Dr. Bowes' rationale for the select marked limitations to which she

6    opined exists within her memorialized test results and clinical notations, which themselves

7    documented Plaintiff's inability to complete the tests due to her "overwhelm" and Dr. Bowes'

8    firsthand observation that Plaintiff suffered from concentration difficulties.  Tr. 325, 27.  The

9    ALJ's findings regarding Plaintiff's eye contact, grooming, and dress fail to undermine the

10   supportability of Dr. Bowes' opined concentration limitation.  Moreover, the Court agrees Dr.

11   Bowes' opinion was at least as supportable as the opinions of the state agency consultants who

12   conducted no testing, interviews, or examinations in support of their opinions.

13       Accordingly, the Court finds the ALJ's supportability findings regarding Dr. Bowes'

14   opinion are not supported by substantial evidence and the ALJ erred.  Given the ALJ failed to

15   make any consistency findings, remand is required for the ALJ to reconsider Dr. Bowes'

16   opinion.

17   **C.    Remedy**

18       Plaintiff asks the Court to remand for an immediate award of benefits rather than for

19   administrative proceedings.  Dkt. 14 at 13-14. Before ordering remand for an award of benefits,

20   the Court must find three requirements are satisfied: (1) the ALJ failed to provide legally

21   sufficient reasons for rejecting evidence; (2) the record has been fully developed and further

22   administrative proceedings would serve no useful purpose; and (3) if the improperly discredited

23   evidence were credited as true, the ALJ would be required to find the claimant disabled on

1   remand.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (citations omitted).  Even if

2   all three requirements are met, the Court retains flexibility to remand for further proceedings

3   "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled

4   within the meaning of the Social Security Act."  *Id.* (citation omitted).

5          While the Court finds the first and third requirements above are satisfied, it cannot

6   conclude the record has been fully developed and further proceedings would serve no useful

7   purpose.  *See* Dkt. 14 at 14 (citing Tr. 48) (vocational expert testimony that missing as much

8   work as Plaintiff would for headaches is inconsistent with sustained competitive employment).

9   First, an award of benefits is not appropriate based on the ALJ's errors in evaluating Drs.

10  Harless' and Bowes' opinions because outstanding conflicts continue to exist between the

11  medical opinions regarding Plaintiff's physical and mental impairments.  Nor is the Court able to

12  conclude Plaintiff's testimony regarding her headaches and neck pain – erroneously rejected by

13  the ALJ – conclusively renders her disabled.  The Court notes the medical record is relatively

14  underdeveloped regarding Plaintiff's headaches and neck pain, and that the state agency medical

15  opinions regarding Plaintiff's physical impairments, as relied on by the Commissioner, fail to

16  specifically account for Plaintiff's headaches and were completed prior to imaging and findings

17  regarding Plaintiff's neck pain.

18         For these reasons, The Court finds remand for further administrative proceedings is not

19  only appropriate but necessary.

20                              **CONCLUSION**

21         For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this

22  case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

23  405(g).  On remand, the ALJ shall reassess the medical opinions, including, specifically, Dr.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 19

Harless' headache opinion and Dr. Bowes' 2019 opinion; reassess Plaintiff's testimony and specifically address Plaintiff's headache and neck pain testimony; develop the record and redetermine Plaintiff's RFC, including but not limited to addressing any appropriate limitations associated with Plaintiff's headaches and neck pain; and proceed to the remaining steps of the disability determination as appropriate.

DATED this 5th day of June, 2023.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 20